ALTENBERND, Judge,
concurring.
I concur in the majority opinion, but I am concerned that the limited partners’ description of their affirmative defense as an issue of “due care” could be misconstrued. We are not creating any affirmative defense in the nature of comparative negligence concerning claims on guarantees. Primarily, we are requiring the trial court to consider parol evidence before enforcing a power of attorney that does not contain an express power to guarantee.
In this case, the limited partners maintain that the powers of attorney they executed were not intended to allow Mr. Levine to execute personal guarantees on their behalf. They argue that Barnett Bank either had actual knowledge that Mr. Levine lacked this authority or, in the alternative, that the language of the powers of attorney was sufficiently ambiguous that Barnett Bank was not entitled to summary judgment. At this stage in the proceedings, we agree that these issues are not ripe for summary judgment.
Falls at Naples is a limited partnership that owns a commercial condominium in Collier County, Florida. In 1986, the limited partnership decided to refinance the property in order to take advantage of lower interest rates. From our record, we do not know the details of the earlier financing and specifically do not know whether that financing involved personal guarantees.
Most of the limited partners reside in Broward County. On May 14, 1986, Mr. Levine’s secretary sent the limited partners a power of attorney and an explanatory letter. The letter claimed that “the bank” had requested that the limited partners sign the document prior to closing. It further explained that the document was needed to “enable [Mr. Levine] to sign the refinancing papers on the partnership’s behalf.” The letter did not mention personal guarantees. There is no evidence in the record to establish that the limited partners had any knowledge that personal guaran *102 tees would be an aspect of the refinancing. The record is also devoid of any evidence which would establish whether Barnett Bank was aware of this letter or of any additional agreements among the partners. Apparently, none of the limited partners attended the closings, and the evidence is in dispute concerning their knowledge of the guarantees prior to default on the three promissory notes.
These form powers of attorney are typed on paper suggesting that they were prepared by a law firm. The record does not provide any information concerning the law firm’s involvement, if any, in this transaction. Each power of attorney states that the limited partner is executing the instrument “individually and not as limited partner[s].” These documents appoint Mr. Levine as “attorney ... to do any and all acts that he, in his sole discretion, shall deem necessary or prudent with regards to the acquisition of the property ... including but not limited to executing any document or instrument affecting the interest in said property....” While the documents give Mr. Levine broad powers to do every act “necessary to be done in and about the premises,” they contain no language expressly authorizing him to borrow money on the credit of the individual partners or to execute personal guarantees on their behalf.
Our decision does not address the rights and remedies that a limited partner might have against a general partner under such circumstances. We only address Barnett Bank’s ability to enforce personal guarantees that were signed by Mr. Levine for the individual limited partners pursuant to the authority given to him in the powers of attorney. Although the limited partners describe their affirmative defense as an issue of “due care,” I am inclined to believe that the real issue involves an ambiguous power of attorney that requires parol evidence prior to its interpretation.
The power “to guarantee” can be explicitly stated in a power of attorney. See Duke v. Heppleston, 258 F.Supp. 313 (S.D.Fla.1966), aff'd, 386 F.2d 996 (5th Cir. 1967). In the absence of a clear delineation of such power, a court may well conclude that the power to guarantee is not within the powers granted by the power of attorney because “[a] power of attorney must be strictly construed and the instrument will be held to grant only those powers which are specified.” Bloom v. Weiser, 348 So.2d 651, 653 (Fla.3d DCA 1977). “Generally, powers of attorney are strictly construed and will be closely examined in order to ascertain the intent of the principal.” De Bueno v. Castro, 543 So.2d 393, 394 (Fla.4th DCA 1989). At least in other jurisdictions, the authority to borrow money on the credit of the principal requires such express authority because it “is among the most important and also dangerous powers which a principal can confer upon an agent.” 3 Am.Jur.2d Agency § 93 (1986). Obtaining a loan on the basis of a personal guarantee of a principal is certainly similar, in many respects, to borrowing money on the principal’s credit, and should require no less scrutiny.
Even though these powers of attorney do not expressly contain authority to guarantee, I agree that, at this stage of the proceedings, they should not be construed against the Bank as a matter of law. The trial court is authorized to consider parol evidence to determine whether the limited partners intended to permit Mr. Levine to execute the guarantees at the time of the closings and whether the Bank was legally entitled to conclude that the limited partners had granted Mr. Levine this power, even in the absence of express written authorization. See De Bueno. I am inclined to believe that the “due care” theory, for all practical purposes, is limited to these issues.